## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESUS R. SANCHEZ, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | Case No. 2:11-cv-02548-STA-cgc |
| v. ) ) | |
| E-BACKGROUNDCHECKS.COM, INC., ) ) | |
| Defendant. ) | |

### DEFENDANT E-BACKGROUNDCHECKS.COM, INC.'S
### REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
### TO ELIMINATE CLASS ALLEGATIONS PURSUANT TO RULE 23(D)(1)(D)

In his opposition brief to BGC's motion to eliminate class allegations (Docket No. 49) ("Pl.'s Brief"), Sanchez asserts functionally one argument. He repeatedly—and erroneously—argues that the Court can easily ascertain and certify this class if it merely makes BGC do what it should already be doing: update its records. (*See, e.g.*, Pl.'s Brief at 9). This implication is false. Sanchez purports to support his contention by repeatedly asserting that this is a simple "yes or no" question of whether a report contains a sealed or expunged criminal record.[1] This argument grossly mischaracterizes BGC's position and the true inquiry in which the Court would have to engage to ascertain the class. The question really is: under relevant state law, which controls sealing and expunging criminal records, for every state nationwide, did a consumer report contain sealed or expunged criminal record information that was sealed or expunged *at the time BGC prepared the report*?

---

[1] In reality, this is two distinct questions. The legal effect of sealing a criminal record is different from expunging a criminal record. *Compare, e.g.*, 20 Ill. Comp. Stat. 2630/5.2(E) (defining expunge under Illinois law as to "physically destroy records") *with* 20 Ill. Comp. Stat. 2630/5.2(K) (defining seal under Illinois law as to "physically and electronically maintain the records . . . but to make the records unavailable without a court order").

Contrary to Sanchez's assertions, ascertaining members of the proposed class involves more than simply updating records. For this Court to decide if persons are members of the proposed class, it would need to:

- Determine whether states allow persons to "seal" or "expunge" records, or neither, or both;

- Compare each report that BGC has produced against all available individual court records (to the degree they are available at all) from hundreds of courts and agencies across the country,[2] and to state document destruction and confidentiality procedures, to see whether a record is no longer publicly available with its source and, if so, whether the reason for unavailability is that the individual has a sealed or expunged conviction (as opposed to the court or agency having adopted some other rule limiting information it provides);[3]

- Determine whether at the time that BGC produced a report a court had sealed or expunged the person's file, as opposed to sealing or expunging the file subsequent to BGC producing the report;

- Determine whether, even if a court had ordered a file to be sealed or expunged, that order had been effectuated at the time of the report—there is often a buffer period between when a court issues an expungement or sealing order and when the records are actually destroyed or sealed,[4] which varies by state;

Sanchez does not suggest where this inquiry would even begin. BGC cannot generate a list of persons for whom it has reported sealed or expunged criminal records because, quite logically, it does not classify data in that manner. Sanchez has not suggested how he, or this Court, could find a list of consumers who had sealed or expunged records because those records,

---

[2] Much of this information, including orders that seal a record, is non-public. Indeed, the very nature of sealed or expunged offenses is that they cannot be publicly discovered. Plaintiff has not suggested how this analysis would even proceed—that is, there is no suggestion how the Court could even determine persons with sealed or expunged records.

[3] Sanchez takes it for granted that if a record no longer appears, it must have been sealed or expunged. This is wrong. Increasingly, states limit the duration for which their system reports information, so that some information is removed by operation of law. *See, e.g.*, Mass. Gen'l L. ch. 6, § 172. This question necessarily varies between hundreds of state jurisdictions and administrative agencies, and these people would appear in the Court's analysis of the proposed class with no way to distinguish, without further individual inquiry, whether they are properly class members.

[4] For example, in Florida, the subject of Sanchez's record, state agencies have sixty (60) days to challenge a sealing order on procedural grounds before it must be effectuated. *See* Fla. Stat. § 943.059(2)(d). Such a record would be "sealed" per to the class definition, but still publicly available.

and the orders sealing them, are necessarily out of the public domain. Nor has Sanchez suggested how this Court would thus obtain information necessary to decide membership in the class. In particular, even assuming that a record is no longer publicly available, Sanchez has suggested no way of determining (1) whether the reason it became unavailable was an expungement (*see supra* note 3), or (2) when the record became unavailable. In short, Sanchez's brief uses smoke and mirrors to hide what would be a Herculean task. This is not a case where the Court can simply run down a roster and check off who is to be included in the class—the class is beset by individual inquiries and the Court should strike these allegations.

## ARGUMENT AND CITATION TO AUTHORITY

Both parties agree that inaccuracy is a threshold element of a 1681e(b) claim and that district courts have the authority to strike class claims where the Complaint demonstrates that the plaintiff cannot maintain the proposed class. (Pl.'s Brief at 3, 6-8); *see Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming the power of district courts to strike class claims based solely on the Complaint) . The parties further agree that ascertainability is a critical element of any class definition. (Pl.'s Brief at 8). The disagreement here is whether the class definition that Sanchez has pled is ascertainable. The disposition of this question is driven entirely by the class *as presented in the Complaint*. *See Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1971) (holding that it is reversible error to consider issues outside those presented in the Complaint on a motion to dismiss).

### I.   Sanchez's Proposed Class is not Ascertainable

Courts have repeatedly recognized that problems of ascertainability allow a court to strike class claims at the outset rather than await a motion for class certification. *See, e.g.*, *Pilgrim*, 660 F.3d at 949; *Bradley v. Mason*, No. 1:11 CV 17, 2011 WL 2470297 (N.D. Ohio June 20, 2011);

*Schilling v. Kenton Cnty., Ky.*, No. 10-143-DLB, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011); *Bauer v. Dean Morris, L.L.P.*, No. 08-5013, 2011 WL 3924963 (E.D. La. Sept. 7, 2011). As detailed above, Sanchez's class is not ascertainable—which negates the supposed manageability administrative benefit of class treatment—because merely determining whether someone is *in* the class (to say nothing of liability), presents an extraordinarily burdensome and complicated undertaking in the absence of the class members as actual participants in the litigation (*i.e.*, if they were in the litigation, they could provide copies of expungement paperwork).

Sanchez repeatedly stresses that there is only one simple yes-or-no question that the Court must ask: did a report contain a sealed or expunged criminal record? Contrary to his representation, there is no one-size-fits-all objective criteria that will allow BGC or this Court to determine who is in the class. *See Schilling*, 2011 WL 293759, at *5 (a class must be so definite that it is "administratively feasible" for the court to determine whether a person is a member).

Further, ascertaining the class would entail substantial consideration of the particulars of sealing and expunging, which vary significantly from state to state. In many states, the legal effect of sealing and expunging is notably different, with sealing involving the mere sequestration of records and expunging resulting in physical destruction of records. *See, e.g.*, 20 Ill. Comp. Stat. 2630/5.2 (defining the different effect of sealing and expunging under Illinois law); Fla. Stat. §§ 943.059 & 943.0585 (defining, respectively, sealing and expungement differently under Florida law). Some states only allow people to expunge records, not to seal them, *see, e.g.*, O.C.G.A. § 35-3-37 (outlining the process for expungement under Georgia law), or vice-versa. *See, e.g.*, Ariz. Rev. Stat. § 13-4051 (allowing sealing of records in certain situations, but not expungement). These variations are relevant because they will inform the decision of whether BGC actually erroneously reported "expunged or sealed" criminal records,

as the class definition suggests.  (*See* Compl. § 31(c)).  These variations also belie the complexity of simply saying a record has been "sealed" or "expunged," as some states eschew those labels entirely.  *See, e.g.*, Conn. Gen. Stat. § 54-142(a) (2011) (discussing "erasure" of criminal records); N.H. Rev. Stat. § 651:5 (discussing "annulment" of criminal records).

*Schilling* provides an apt comparison.  There, the court struck class claims at the outset of the case where the proposed class complained of abuse and deficient medical care in a jail facility, correctly noting that the class would be unascertainable.  *Schilling*, 2011 WL 293759.  Sanchez attempts to distinguish *Schilling* on the fact that it involved actual damages.  But that was not the crux of the decision.  Rather, the court stressed that to ascertain the class, it would have to first answer the individual question of whether people even fit the class, "which is impossible to do without reference to the type of deficient care each individual may have received or the type of abuse each individual may have endured." *Id.* at *6.  Just as Sanchez does here, the plaintiff in *Schilling* attempted to shoehorn the ascertainment of the *Schilling* class into a single question:  did a person suffer abuse while in a single detention facility?[5]  The *Schilling* court saw through the guise:  "[T]o resolve the legal issue presented the Court must delve into the specific facts of each inmate's incarceration and medical needs relative to that inmate." *Id.* at *9.  The same is true here.  Sanchez repeatedly obscures the true nature of his class definition by assuring the court that it requires an answer to a simple yes/no question.  But, it is the analysis necessary to *arrive* at that yes or no that, like in *Schilling*, mars the class here.

---

[5] Every class action can be reduced to a single yes-or-no question through tortured semantics.  That should not overshadow the actual inquiry necessary to answer such a question.  Take, for example, the Supreme Court's recent landmark decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).  Using the plaintiff's approach, the proposed *Dukes* class asked only one question: had individuals been denied promotions at Wal-Mart on the basis of their gender?  The Supreme Court, of course, properly recognized that this seemingly simple question is really one fraught with individual determinations and overturned the certification decision.  This Court should be similarly wary of attempts to paint a complicated class inquiry as simple.

Sanchez further attempts to distinguish *Owner-Operator Indep. Drivers Ass'n v. USIS Commercial Servs, Inc.*, 537 F.3d 1184 (10th Cir. 2008), where the Tenth Circuit found that because section 1681e(b) claims require a predicate showing of inaccuracy, they are "***not amenable to class action***" because inaccuracy "***require[s] a particularized inquiry.***" 537 F.3d at 1194 (emphasis and alteration added). Sanchez argues that the variables at issue in *Owner-Operator* are factually distinct from this case. (*See* Pl.'s Brief at 10-11). To the contrary, the same concerns that informed the Tenth Circuit should guide the Court here. As in *Owner-Operator*, determining whether a report was inaccurate for purposes of the class definition would require inquiry into the accuracy of *each report*. This Court will have to determine whether multiple pieces of information taken together, in a particular time frame, evidence a consumer report with the particular inaccuracy alleged in the class definition. (*See* Pl.'s Brief at 11) (stressing that identical concerns controlled in *Owner-Operator*). Put simply, *Owner-Operator* is compelling appellate level authority for the proposition that a court should be critical of attempts to plead 1681e(b) class actions that will require an individual determination of inaccuracy—as Sanchez has done here.

Ascertainability requires some objective administrative measure by which a court can measure whether an individual fits the class definition. Sanchez's attempts to reduce this inquiry to a catch phrase do not change the truth that this class presents the type of individualized inquiry that courts have routinely found warrants eliminating class claims at the outset.

## II. Sanchez's Proposed Class Cannot Satisfy Rule 23(b)(3)

The proposed class cannot meet Rule 23(b)(3)'s predominance and superiority requirements. Even if the class is ascertainable, individualized questions necessary to show BGC's liability to each class member overwhelm common questions of law or fact. There

cannot be a common question of whether BGC prepared an inaccurate report because each potential class member's report, and the reasons for its purported inaccuracy, will vary.[6]

Sanchez's arguments do little to undermine the sound conclusion that courts have the power to strike class allegations where the failure of the class is evident from the Complaint. (*See* Pl.'s Brief at 12-14). Sanchez attempts to distinguish *Pendleton v. Trans Union Systems Corp.*, 76 F.R.D. 192 (E.D. Pa. 1977) on the grounds that it involved claims for negligent failures to meet 1681e(b). (Pl.'s Brief at 12-13). But Sanchez misses the point of *Pendleton*. Although the *Pendleton* court addressed the issue of actual damages for negligence, the key holding was that common questions did not predominate because "liability requires proof that there was an error in the individual's credit report. There can be no liability for denials of credit caused by accurate reports." 76 F.R.D. at 194-95. Contrary to Sanchez's argument, the court specifically noted that it's decision was not based on the requirement to prove individual damages. Instead, it found that the individualized requirement to prove inaccuracy to be included in the class would overwhelm any common questions. The exact same burden exists here. *See id.* at 195.

Sanchez also glosses over *Mays v. Tenn. Valley Auth.*, 274 F.R.D. 614 (E.D. Tenn. 2011), a putative class action filed in the wake of the massive 2008 TVA coal ash spill in eastern Tennessee. (*See* Pl.'s Brief at 13). The *Mays* court found class treatment inappropriate because the threshold question of class membership would require consideration of individual questions such as whether a person even had ash on their property. 274 F.R.D. at 626. Here, similar individual questions of whether a report was inaccurate predominate over common questions.

---

[6] As an initial matter, BGC did not and does not concede that a report containing sealed or expunged criminal record information would necessarily be inaccurate. (*See* Pl.'s Brief at 12 n.8). In its initial brief, BGC referred to a report with an inaccuracy as one containing sealed or expunged records, only because that is the purported "inaccuracy" in Plaintiff's class. As BGC argued in its motion to dismiss (Docket No. 42), variations in state law and the difference between sealed and expunged records may mean that reporting a "sealed" record is technically accurate under the Sixth Circuit's accuracy standard. *See generally* BGC's Motion to Dismiss at 3-6.

7

Sanchez's reliance on *Soutter v. Equifax Info. Servs., LLC*, No. 3:10cv107, 2011 WL 1226025 (E.D. Va. March 30, 2011) is misplaced.  As an initial matter, the persuasive effect of *Soutter* should minimal: the Fourth Circuit accepted interlocutory appeal of this certification order and will hear oral arguments in September 2012.  Further, *Soutter* is factually distinct from this case in a number of important ways.

Sanchez quotes *Soutter* for the proposition that a class is ascertainable without need for an impossible degree of definitional precision.  (Pl.'s Brief at 15).  *Soutter*, however, involved a markedly different class and inquiry than that presented here.  In *Soutter*, plaintiff purported to represent a class of persons whom Equifax reported as having unpaid judgments that the consumers had actually paid.  2011 WL 1226025, at *1.  In contrast to this case, which proposes a *nationwide* class, *Soutter* involved a limited class of consumers in Virginia.  *Id.*  Importantly, Equifax's ascertainability argument was *not* about the burdensome individual inquiry that is required for a 1681e(b) claim.  Rather, the parties had already procured lists of persons about whom Equifax prepared suspect reports and a list, maintained by the Virginia judiciary, of persons who had satisfied judgments, and it could cross-reference those lists.  The entire ascertainability debate was about the sufficiency of these lists.  2011 WL 1226025, at *5-7.

By contrast, here there is no nationwide list of persons for whom myriad local courts have sealed/expunged criminal records.  Sanchez infers that records that are no longer publicly available must have been sealed or expunged. To support this inference, Sanchez assumes that courts and agencies **only** remove records that have been sealed or expunged, and not for other reasons.  This is simply not true.  For example, Massachusetts limits records it reports to specific time frame; the disappearance of a report from a record could be a result of either (a) sealing, (b) expungement, or (c) expiration of the statutory reporting period. *See* Mass. Gen'l L. ch. 6, § 172.

8

As such, merely noting that a record no longer appears is not sufficient to figure out class membership—still further individual inquiry would be necessary.

Even assuming *arguendo* the Court's ability to gather such information, this list would need to be categorized by date and still *cross checked against every individual report potentially at issue here*. In *Soutter*, Equifax was able to generate a list using objective criteria. BGC simply cannot do that here.[7] There is no search that can generate a list of reports containing a sealed or expunged record because that is the very question: was the reported record sealed or expunged. As such, individual questions predominate over common questions of law or fact and the class, as presented in the complaint, cannot satisfy Rule 23(b)(3).

**III.   Sanchez's Proposed Class Cannot Satisfy Rule 23(a)(2)**

Sanchez devotes almost no time to rebuffing the charge that his class lacks common questions of law or fact. First, he offers an example of how this class raises an issue of inaccuracy commonly found in FCRA class actions: "in this case Sanchez alleges that [dismissed Defendant] VPI failed to give notice . . . . The issue of whether notice was given is definitional to the class." (Pl.'s Brief at 17). This is irrelevant; Sanchez does not make this accusation against BGC—there is no question of notice as to BGC. (See Compl. ¶ 31(c)).

Second, Sanchez dismisses concerns about variations in state law, positing (with obvious sarcasm) that perhaps there exists a state law that allows consumer reporting agencies to otherwise report sealed or expunged records. (Pl.'s Brief at 17). But that is a straw man argument that self-servingly ignores BGC's actual argument. As discussed above, BGC's point is that variations in how states treat sealing and expunging will necessarily dictate whether a

---

[7] Sanchez suggests that BGC was disinclined to volunteer information such as the number of reports sold because it fears the possibility of both a small or a large class. This is putting the cart before the horse. The entire thrust of BGC's motion is that it ***cannot ascertain the number of persons in the class*** because the class is defined in such a way that individual review of every record produced over the past five years, compared against a host of state court documents, would be necessary before BGC could begin to produce a reliable estimate.

US2008 3340022.4

report was accurate. Contrary to Sanchez's supposition, the FCRA does not *de facto* prohibit the reporting of sealed or expunged records. Rather, the question is whether such a report is *inaccurate*. *See, e.g.*, *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001) (describing the Sixth Circuit's "technical accuracy" standard for 1681e(b) claims, where a report is accurate if it is technically "accurate," even if it is otherwise misleading).

Third and finally, Sanchez again suggests there is no onerous undertaking because BGC is being asked to do what it ought to do anyway. As detailed above, this is a mischaracterization of what the proposed class would entail. It is not a matter of updated records, it is a matter of comparing highly individualized reports against hypothetical lists of expunged records, influenced by varying laws from all fifty states, and comparing these on the relevant time period.

## CONCLUSION

For the reasons described above, and those detailed in BGC's motion, the Court should grant BGC's motion and eliminate Plaintiff's class allegations.

Dated:  May 24, 2012

Respectfully submitted,

s/ Angie C. Davis
_____
ANGIE C. DAVIS
Tennessee Bar No. 20043
KATHERINE M. BOGARD
Tennessee Bar No. 28099
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
2000 First Tennessee Building
165 Madison Avenue
Memphis, Tennessee  38103
(901) 526-2000 – telephone
(901) 577-2303 – facsimile

CINDY D. HANSON (*Admitted Pro Hac Vice*)
Georgia Bar No. 323920
JOHN P. JETT (*Admitted Pro Hac Vice*)
Georgia Bar No. 827033
KILPATRICK TOWNSEND STOCKTON, LLP
1100 Peachtree St. Suite 2800
Atlanta, Georgia  30309-4530
(404)815-6500 – telephone
(404)815-6555 – facsimile

*Attorneys for Defendant E-BackgroundChecks.com, Inc.*

Dated:  May 24, 2012

Respectfully submitted,

s/ Angie C. Davis
_____
ANGIE C. DAVIS
Tennessee Bar No. 20043
KATHERINE M. BOGARD
Tennessee Bar No. 28099
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
2000 First Tennessee Building
165 Madison Avenue
Memphis, Tennessee  38103
(901) 526-2000 – telephone
(901) 577-2303 – facsimile

CINDY D. HANSON (*Admitted Pro Hac Vice*)
Georgia Bar No. 323920
JOHN P. JETT (*Admitted Pro Hac Vice*)
Georgia Bar No. 827033
KILPATRICK TOWNSEND STOCKTON, LLP
1100 Peachtree St. Suite 2800
Atlanta, Georgia  30309-4530
(404)815-6500 – telephone
(404)815-6555 – facsimile

*Attorneys for Defendant E-BackgroundChecks.com, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 24th day of May 2012, a copy of the foregoing electronically filed Defendant e-BackgroundChecks.com, Inc.'s Reply Memorandum of Law in Support of its Motion to Eliminate Class Allegations Pursuant to Rule 23(d)(1)(D) was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

| | |
|---|---|
| Matthew A. Dooley | Kenneth P. Hassett |
| Dennis M. O'Toole | HASSETT & ASSOCIATES, P.A. |
| Anthony R. Pecora | 6099 Stirling Road, Suite 217 |
| STUMPHAUZER, O'TOOLE, MCLAUGHLIN, MCGLAMERY & LOUGHMAN CO., LPA | Davie, Florida 33314-7236 |
| | khassett@criminaldefense.cc |
| 5455 Detroit Road | |
| Sheffield Village, Ohio 44054 | |
| mdooley@sheffieldlaw.com | |
| dotoole@sheffieldlaw.com | |
| apecora@sheffieldlaw.com | |

                                                     s/ Angie C. Davis

US2008 3340022.4